## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Fort Lauderdale Division

| | | |
|---|---|---|
| BERNARD McDONALD, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 20-CV-60297-RKA |
| | ) | |
| CITY OF POMPANO BEACH, | ) | |
| FLORIDA, a Florida municipal | ) | |
| corporation, | ) | |
| | ) | |
|    Defendant. | ) | |
| _____ | ) | |

### VERIFIED AMENDED COMPLAINT

Plaintiff Bernard McDonald sues the Defendant City of Pompano Beach, Florida (City),

for injunctive and declaratory relief and damages, and alleges as follows:

### INTRODUCTION

1.       In his original Complaint, filed February 12, 2020, Plaintiff alleged that the Street

Solicitation Ordinance of the Pompano Beach City Code, §100.41 (Street Solicitation

Ordinance), violated the First Amendment because it specifically singled out the solicitation of

donations for differential treatment and was therefore a content-based restriction.  ECF 1.

2.       In response to Plaintiff's lawsuit, the City passed amendments to §100.41 on June

23, 2020, revising the prohibited conduct and removing a total of fifteen restrictions which were

the target of Plaintiff's initial Complaint.  The City re-named the ordinance the Pedestrian and

Motorist Intersection Safety Ordinance.  *See* Exhibit 1 (Ordinance 20-60/Amendments to

§100.41). By the amendments, the City significantly narrowed the scope of its regulations on

solicitation by restricting it only at eight specific intersections, and at other locations such as railroad crossings, construction sites, and accident scenes. *See* §100.41(B)(2 - 6).

3.      However, also on June 23, 2020, the City amended its Building or Obstruction on Public Streets, Sidewalks, and Right-of-Way Swale Areas Ordinance, §100.35 (Sidewalk Ordinance), to now include a complete ban of solicitation of motorists along every roadway with three or more lanes in one direction (including turn lanes) throughout the entire city. *See* Exhibit 2 (Ordinance 20-59/Amendments to §100.35). A violation of the ordinance is punishable by a sentence of jail and/or a fine.

4.      Such a broad ban covers an enormous portion of the City's roadways and burdens substantially more than speech than is necessary to achieve the City's interest in traffic safety.

5.      Thus, at the same time it amended §100.41, the City enacted an unconstitutional prohibition of speech in §100.35 which criminalizes solicitation along broad swaths of city roads. Quite simply, the City has traded in one First Amendment violation under §100.41 for another under §100.35.

6.      Plaintiff is a homeless man who has solicited donations in the City, and wants to continue doing so to contribute to his survival. He was harmed by the former version of §100.41 (the Street Solicitation Ordinance), which violated the First and Fourteenth Amendments to the Constitution. He seeks damages for the unconstitutional curtailing of his rights.

7.      Moreover, the current Sidewalk Ordinance, §100.35, is also unconstitutional, both facially and as applied to Mr. McDonald. Plaintiff wants to continue to solicit donations along three-lane roads in Pompano Beach, but fears being arrested for doing so. He has suffered damages as a result.

8.      Plaintiff therefore seeks injunctive and declaratory relief and damages due to the City's Sidewalk Ordinance (§100.35) as amended on June 23, 2020, which violates his rights under the First Amendment to the United States Constitution, and the rights of all people seeking to exercise their First Amendment rights in Pompano Beach.

## JURISDICTION AND VENUE

9.      This case arises under the First and Fourteenth Amendments to the United States Constitution and 42 U. S. C. § 1983.

10.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. The Court also has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. § 2201.

11.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because the events giving rise to the claims occurred in this judicial district.

## PARTIES

12.      Plaintiff Bernard McDonald is a citizen of the United States and a life-long resident of Pompano Beach.  He is currently homeless and must request donations from others to contribute to his survival.  He was arrested in August 2018 and sentenced for a violation of the original version of the Street Solicitation Ordinance, §100.41.   After his arrest, Plaintiff was deterred from seeking donations in Pompano Beach, and sought donations less frequently through and beyond the time of filing of the instant lawsuit in February 2020.  He wishes to continue to request donations, but reasonably fears that he will be arrested and jailed again under the recently amended Sidewalk Ordinance, §§100.35(C)(1)(b) and (C)(2).  Since passage of the amendments, Plaintiff has essentially stopped asking for donations in Pompano Beach.

13.     Defendant City of Pompano Beach, Florida, is a municipal corporation organized under the laws of the State of Florida.  The City is sued based on the acts of its officials, agents and employees.  At all relevant times, the City and its agents were acting under color of state law.

## STATEMENT OF FACTS

**A. The Street Solicitation Ordinance § 100.41, Original Version**

14.     On September 23, 2003, the City of Pompano Beach enacted the Street Solicitation Ordinance of the Pompano Beach City Code, §100.41 (the Street Solicitation Ordinance) which applied throughout the entire City of Pompano Beach.

15.      Section (A) of the Ordinance defined a "street solicitor" as someone "who stands or goes upon any portion of a public street, highway or neutral ground within the City for the purpose of, or actually engaged in:  soliciting, collecting or accepting donations or contributions of any kind from an occupant or occupants of any vehicle; soliciting business or employment from an occupant or occupants of any vehicle; selling any thing or service or distributing any tangible thing or object to an occupant or occupants of any vehicle."

16.     "Neutral ground" was defined as "[a]ny area that divides a roadway or divides the roadway for vehicles driving in opposite directions including, but not limited to paved or unpaved medians."

17.     Section (B) of the Ordinance made it unlawful for any person to fail to comply with or to violate any one of twenty-one separate regulations and requirements for street solicitors within the City.

18.     The regulations and requirements of the Ordinance under Section (B) included the

following numbered sub-sections:

(1) Street solicitors may solicit only between the hours of 6:00 a.m. – 12:00 p.m.
daily;

(2) Street solicitors may solicit only on City streets, highways or neutral ground
located at, or immediately adjacent to an intersection controlled by an official
traffic control signal as defined by F.S. 316.003(24), or as modified hereafter,
and only when said devices are fully operational;

(3) Street solicitors may not solicit during any period when visibility is
substantially impaired by inclement weather;

(4) No one under 18 years of age may solicit in accordance with § 131.17 of the
City's Code of Ordinances;

(5) Street solicitors may not solicit at an intersection or any portion thereof, which
contains, or is controlled by a railroad crossing, or within six hundred (600)
feet of any such intersection.  No solicitation or conduct permitted pursuant to
this section may be conducted on railroad property without written permission
of the railroad;

(6) No street solicitor shall solicit at or within any portion of an intersection which
is under construction, repair or renovation;

(7) No more than two (2) solicitors shall occupy any one corner or location within,
or portion of, an intersection at any one time for purposes of solicitation and
violation of this provision shall constitute a safety hazard. Upon notification of
the violation by city law enforcement officers, solicitors at the location may
reach an agreement to achieve compliance between themselves and
immediately implement said resolution.  If no such agreement is reached, all
solicitors at the corner or specific location of the violation may then be
removed from the location for the remainder of that day's solicitation period
pursuant to the provisions of the subsection (9) below;

(8) No street solicitor shall solicit within any intersection of location where a
traffic accident has occurred involving disabled vehicles, property damage or
personal injury, and while police, fire or fire rescue are engaged in their
various duties, until such time as the site is cleared of said personnel and
vehicles involved in the accident removed, and the normal flow of traffic has
resumed;

(9)  City law enforcement officers may order the temporary removal of a street solicitor from any location during an emergency situation or under circumstances requiring said removal for the immediate safety of the public or the solicitor.  Failure to obey any such lawful order shall constitute a violation of this section along with other applicable Florida statutes;

(10) All street solicitors must wear an OSHA or ANSI approved orange or other brightly-colored safety vest containing reflective material on the front and back, while engaged in solicitation activities;

(11) Street solicitors shall only solicit while the flow of traffic on the side of the road or highway where the solicitation takes place is stopped;

(12) Street solicitors may not alter or impede the flow of traffic by any means, and upon an identification of a green arrow or if none, a green light, may not remain in the portion of the paved road or highway designated for vehicular use, and shall return to neutral ground, sidewalk or other location off-road area upon the commencement of traffic flow from its stopped position;

(13) No street solicitor shall solicit on any City street, highway, or neutral ground while under the influence of alcoholic beverages, chemical substances or controlled substances, when effected to the extent that the solicitor's normal faculties are impaired.  "Normal faculties" mean those faculties of a person, such as the ability to see, hear, walk, talk, make judgments, and, in general, to normally perform the many mental and physical acts of our daily lives, including, but not limited to those acts required to safely conduct solicitation activities upon city streets, highways or neutral ground;

(14) No one may consume an alcoholic beverage or possess any open container containing an alcoholic beverage upon any City street, highway, neutral ground, sidewalk, or any unlicensed public premises, pursuant to section 133.11 of the City's code of Ordinances;

(15) Street solicitors shall not place personal belongings including but not limited to, folding chairs, umbrellas, coolers or other objects, in the median, neutral ground, street or roadway, but may utilize other materials to secure solicitation items and prevent their uncontrolled dispersal onto the streets.  All such materials must be removed at the end of a solicitation period;

(16) No products or goods may be deposited or stored on streets, highways, neutral ground, sidewalks or any other public property, for the purpose of distribution of said products or goods to street solicitors.  Street solicitors may place an amount of goods on a median or neutral ground which are needed for

immediate sales or distribution, provided the items are secured in a manner to prevent uncontrolled dispersal onto the streets and which does not present a hazard to motorists and pedestrians. All products or goods must be removed from a location at the end of the solicitation period to avoid letter or other hazards;

(17) No street solicitor shall: (a) solicit in an aggressive or intimidating manner and shall not intentionally block the path of travel or a vehicle or cause a vehicle to take evasive action to avoid contact or collision with a solicitor; (b) physically touch any portion of a vehicle nor throw any object at or into any vehicle unless specifically requested by an occupant; (c) create a dangerous condition by disrupting or distracting motorists or vehicular traffic for solicitation purposes.

(18) Street solicitors shall place a brightly-colored, portable reflective sign within approximately 300 feet, or where practicable, to inform vehicular traffic that solicitors are active at the upcoming intersection. Signs shall be placed for each direction of traffic affected by the activity of a solicitor. At the conclusion of that day's solicitation activity, the sign shall be removed by the solicitor;

(19) All street solicitors shall provide and display a number or other marking on their person adequate to identify an individual solicitor, for purposes of potential problems or complaints. Said number or marking shall be displayed to the public during all solicitation activities. Information regarding the identity of a solicitor will be provided to law enforcement officers for investigative purposes, by companies or organizations upon request;

(20) All companies or organizations utilizing or placing more than one street solicitor on City streets at any one time, shall first provide the City Manager wit the name of a current contact person from the company or organization along with a valid telephone number and address, for the City to provide said information to its residents on its cable television channel or by other means, for purposes of citizens complaints or comments;

(21) All street solicitors must complete a roadway safety course from the National Safety Council or a similar, equivalent safety course, and must furnish proof of completion of same within the preceding 12-month period when so requested by a city law enforcement officer.

19.     Section (C) of the Ordinance penalized individuals found violating the Ordinance by a fine not exceeding $500.00 or imprisonment in the county jail for a term not exceeding 60 days, or by both fine and imprisonment.

20.     In sum, the Ordinance completely banned, while standing on the street, median, or shoulder, the solicitation of donations, business, or sales from vehicle occupants between the hours of 12:00 p.m. and 6:00 a.m. and at intersections without traffic control signals; but did not ban any other forms of speech.

21.     Similarly, the Ordinance imposed a set of onerous requirements only upon those wishing to solicit donations, business, or sales from vehicle occupants while standing on the street, median, or shoulder; but did not impose these requirements for any other forms of speech. Moreover, these requirements were so vague, broad, and difficult to comply with, that they amounted to an effective ban on soliciting business, donations, or sales from vehicle occupants.

22.     Thus, the Street Solicitation Ordinance singled out the solicitation of donations, business, or sales for differential treatment, and was therefore content-based.

**B. Enforcement of the Original Version of §100.41**

23.     The City of Pompano Beach does not have its own municipal police force.

24.     The City contracts with the Broward County Sheriff's Office (BSO) to provide police services to the residents of Pompano Beach.

25.     As agents of the City of Pompano Beach, BSO deputies patrol the city streets and are empowered to enforce Pompano Beach municipal ordinances.

26.     The BSO has the authority to cite and arrest people for violations of the Pompano Beach Municipal Code, including § 100.41 and §100.35.

27.    From the beginning of 2018 through the end of 2019, the Street Solicitation Ordinance, §100.41, was enforced exclusively against people who were standing on street corners and medians holding signs and soliciting donations.  Upon information and belief, the vast majority of these individuals were homeless.  During that time, nearly 100 people—all of whom were soliciting donations—were either arrested or cited for a violation of the Ordinance.

**C.  Arrest of Plaintiff Bernard McDonald Under the Former Version of §100.41**

28.    At approximately 7:30 a.m. on August 10, 2018, Plaintiff Bernard McDonald began standing on the sidewalk and shoulder of the roadway next to the southbound lane of Federal Highway near the corner of Sample Road and Federal Highway.

29.    Mr. McDonald held a sign that read, "Homeless, please help me if you can."   He was trying to solicit donations so that he could buy food or other items needed for his survival.

30.    When southbound traffic came to a stop at the light at the intersection, Mr. McDonald would walk along the sidewalk, median or the shoulder of the road and display his sign.

31.    If a motorist or an occupant of a stopped car signaled to Mr. McDonald that they wanted to give him a donation, he would walk to the car and accept it and then resume walking along the sidewalk, median or shoulder holding his sign.  In most instances, the people in cars who gave Mr. McDonald money were in the lane of traffic immediately next to the shoulder such that they could hand Plaintiff their donation without Mr. McDonald having to enter the street.

32.    Mr. McDonald was not blocking or obstructing traffic.

33.     Around mid-day, a marked Broward Sheriff's squad car parked in a lot near the area where Mr. McDonald was standing.  Broward Deputy Sheriff Andrews got out of the squad car and called Mr. McDonald over to the parking lot.

34.     Mr. McDonald complied and walked over to where the officer was standing.

35.     Deputy Andrews immediately told Mr. McDonald to give him the sign. Again, Mr. McDonald complied and gave it to the deputy.

36.     Deputy Andrews then handcuffed Mr. McDonald behind his back and put him into the back of his squad car.  Mr. McDonald was arrested and taken into custody without incident.

37.     Deputy Andrews charged Mr. McDonald with Street Solicitation, in violation of § 100.41 of the Pompano Beach Municipal Code.

38.     In the arrest affidavit supporting the charge, Deputy Andrews wrote that Mr. McDonald was holding "a cardboard sign with black lettering stating, 'Homeless please help me if you can,'" and that Mr. McDonald "was not wearing an OSHA- or ANSI-approved orange or other brightly-colored safety vest containing reflective material on both front and back."

39.     Mr. McDonald was taken to a holding cell at a BSO station in Pompano Beach and later transported to the Broward County Jail where he remained incarcerated until his first appearance hearing in Broward County Court the following morning.  At that hearing, Mr. McDonald pled no contest and was sentenced to the time he had already served in jail.

40.     On February 12, 2020, Plaintiff initiated this lawsuit by filing his Complaint and Motion for Preliminary Injunction, *see* ECF 4, alleging that the former §100.41 both on its face and as applied to Mr. McDonald violated his rights under the First and Fourteenth Amendments.

-10-

41.     In response to the Motion for Preliminary Injunction, the City stated that it had agreed not to enforce the Street Solicitation Ordinance and had begun the process of "amending its ordinance regulating street solicitation to remove the allegedly unconstitutional sections." ECF 8 at 1.  However, Plaintiff was subsequently stopped by law enforcement on March 21, 2020, while seeking donations in the City, and told to leave the area, and he complied.  ECF 15-1.  On April 30,2020, the Court ordered the City to take further steps to cease enforcement of the Street Solicitation Ordinance, and the City complied.  ECF 24, 25, 25-1.

**D.  Amendments to the Street Solicitation Ordinance, § 100.41**

42.     On June 23, 2020, the City passed amendments to the Street Solicitation Ordinance, which significantly changed §100.41.

43.     First, the City added a definition of "Solicit," which means, "To personally hand to or seek to transmit by hand or receive by hand anything of any kind, whether or not payment in exchange is required or requested, to or from an occupant or occupants of any vehicle which is engaged in travel on or within any portion of any right-of-way."

44.     Second, the City removed the language that singled out and prohibited solicitation for "donations or contributions."  Now, a "Pedestrian (formerly 'Street') Solicitor" is defined as:  "Any person who while standing or going upon any portion of a public street, highway, or neutral ground within the city, personally hands to or seeks to transmit by hand or receive by hand anything of any kind from an occupant or occupants of any vehicle, which is engaged in travel on or within any portion of any right-of-way.  The term shall not apply to any person who does not enter into any portion of the Street of Highway."  A "Street or Highway" includes the "shoulder" of a road and "Neutral Ground" includes a median.  §100.41(2)(A).

45.     Third, the City eliminated many of the onerous regulations and requirements for solicitation—including completing a roadway safety course, wearing a brightly colored vest, erecting a warning sign, and displaying an identification number—reducing the total number of restrictions from twenty-one to six.  Currently, under this Ordinance, a pedestrian solicitor can solicit—including panhandling—along a roadway except subject to the following restrictions:  a person cannot solicit during any period when visibility is substantially impaired by inclement weather, §100.41(B)(2); at an intersection controlled by a railroad crossing, §100.41(B)(3)*;* at an intersection under construction, §100.41(B)(4); at an intersection where an accident has occurred, §100.41(B)(5); or at one of eight listed intersections, §100.41(B)(6).

46.     The eight locations listed in §100.41(B)(6) were identified from accident data submitted by the Broward Sheriff's Office, which compiled and listed the number of accidents at twenty-four major intersections in Pompano Beach.[1]  *See* List, Exhibit 3.  The eight intersections were described as "heavily trafficked intersections" which "experienced a significant number of accidents."  *See* Exhibit 1 at 1-2.  These eight locations were selected based on their higher accident numbers in the City's attempt to narrow the limitations imposed on solicitation to only those locations where the risk of an accident was higher.[2]  The City also included a provision

---

[1] These eight locations include the intersections at Copans Road and Andrews Avenue, Atlantic Boulevard and Dixie Highway, Sample Road and Powerline Road, Copans Road and Powerline Road, Atlantic Boulevard and Federal Highway, Copans Road and Federal Highway, Atlantic Boulevard and Powerline Road, and Sample Road and Dixie Highway.  *See* § 100.41(B)(3).  All of the intersections are three lane roadways (including the turn lane) in each direction.

[2] Nearly all of the twenty-four intersections listed in the accident data chart, including the eight intersections listed in §100.41(B)(6), are three lane roadways in each direction.  Thus, the other three lane road intersections were not found to be so dangerous as to require that solicitation be banned there.

that its law enforcement agency shall review traffic accident data every two years to determine if any change of the locations listed in §100.41(B)(6) is warranted.

### E.  Amendments to the Sidewalk Ordinance, §100.35

47.    On June 23, 2020, the City Commission also passed amendments to §100.35 of the City Code.

48.    Prior to the amendments, §100.35 (which was previously entitled, "Building or Obstruction on Public Streets, Sidewalks, and Right-of-Way Swale Areas") solely addressed the building or placement of any structure or object—inanimate objects such as receptacles, plants, trees, mail and delivery boxes—on streets, sidewalks and right-of-ways, and was silent as to the regulation of pedestrian activity.

49.    Now, pursuant to the amendments to §§100.35(C)(1)(b) and (C)(2), the ordinance, which has been renamed "Building or Obstruction on Public Streets, Sidewalks, and Right-of-Way Swale Areas; Pedestrian Median Safety," restricts pedestrian activity on medians and at all three lane roadways and makes it unlawful for any person to:

(1)  For any period of time, sit or stand, in or on:

(b) any median less than five feet where the adjacent roadway has three or more vehicular travel lanes in any one direction at the point of intersection (including travel lanes), except that pedestrians may use median strips only in the course of lawfully crossing from one side of the street to the other.

(2)  For any roadway that has three or more vehicular travel lanes in any one direction at the point of intersection (including turning lanes), to hand or seek to transmit by hand or receive by hand anything to any person who operates or occupies a motor vehicle of any kind, which vehicle is engaged in travel on or within any portion of the roadway, whether or not such vehicle is temporarily stopped in travel lanes or the

-13-

road.[3]

50.     The prohibition in §100.35(C)(2), which bars people from seeking "to hand or seek to transmit by hand or receive by hand anything to any person who operates or occupies a motor vehicle[,]" is virtually identical to the language the City used in §100.41(A) to define what it means to lawfully "solicit."

51.     Thus, §100.35(C)(2) now criminalizes the very same conduct permitted by the amendment to §100.41(A) if done on "any roadway that has three or more lanes in any one direction (including turning lanes)." Under §100.35(C)(2), solicitation is prohibited next to every three lane roadway in the city.

52.     Further, §100.35(C)(1)(b) prohibits a person from merely sitting or standing on any median that is less than five feet wide next to a roadway that has three or more lanes in one direction, including turning lanes. This amendment effectively bars a person from engaging in panhandling, solicitation or any other protected speech—such as holding a sign or handing out a leaflet—on every median less than five feet wide that is next to a three lane road.

53.     In sum, the new ordinance does two things. First, it prohibits, next to any three-lane road, merely being present on a median less than five feet wide, and therefore prohibits *all* expressive conduct—such as asking for donations—at those locations. Second, it prohibits, next to any three-lane road, giving to or receiving anything (including a donation, flyer, or pamphlet) from a vehicle occupant under all circumstances, even if the person is lawfully and safely on a sidewalk.

---

[3] Violations of §§100.35(C)(1) and (C)(2) are punishable by a fine and/or a jail sentence up to sixty days. §100.35(C)(13).

54.     Through these amendments, the City has enacted a sweeping prohibition in §100.35, which criminalizes expressive conduct, including panhandling, along every three lane roadway in Pompano Beach.

55.     Such a prohibition is not narrowly tailored and burdens more speech than is necessary, in violation of the First Amendment.  Furthermore, such a prohibition fails to leave open, ample alternative channels of communication, in violation of the First Amendment.

**F.  Plaintiff Bernard McDonald**

56.     Plaintiff Bernard McDonald is fifty-five years old and is currently homeless. He cannot find full time work and performs odd jobs and light construction work when it is available.  Because of chronic back pain and other disabilities, Mr. McDonald's ability to do physical labor is increasingly limited.

57.     To help support himself, Mr. McDonald engages in peaceful panhandling in Pompano Beach.  He stands on either the sidewalk adjacent the street, or on a median, or on the shoulder of a city street and displays a sign that states, "Homeless, please help me if you can." Prior to his arrest, he would seek donations in Pompano Beach approximately four to five times per week since January 2018.

58.     Since his arrest and the subsequent amendments to §100.35, Mr. McDonald has significantly curtailed his soliciting for donations in Pompano Beach because he is deterred from doing so, and because of that, has not received donations that he would have otherwise received. When Mr. McDonald walks on the streets of Pompano Beach and sees a BSO squad car, he becomes anxious and scared that the police are following him.

59.     Mr. McDonald remains homeless and poor and wants to continue to solicit donations in Pompano Beach in order to help with his survival, but has stopped asking for donations in Pompano Beach because he fears being arrested under §100.35.

60.     Under the recent amendments to §100.41, Mr. McDonald would be allowed to lawfully solicit for charity at the location where he was arrested in August of 2018, at the intersection of Sample Road and Federal Highway.

61.     However, because it is a three lane road, Mr. McDonald would be subject to arrest if he panhandled there because newly-enacted §100.35(C)(2) makes it a crime to seek "to hand or seek to transmit by hand or receive by hand anything to any person who operates or occupies a motor vehicle" adjacent to "any" three lane road in Pompano Beach.

62.     Mr. McDonald wants to panhandle at Sample and Federal Highway and along other three lane roads in Pompano Beach because, compared to other locations, that is where he can communicate his message to the highest number of people and receive donations that help him to survive.

63.     However, the arrest and sentencing for a violation of the original Street Solicitation Ordinance, and the subsequent amendment to §100.35, have had a chilling effect on Mr. McDonald's exercise of his First Amendment rights in the City of Pompano Beach. Consequently, Mr. McDonald has suffered and continues to suffer damages and harm for the violation of his constitutional rights under the First and Fourteenth Amendments.

## COUNT I –First Amendment, 42 U.S.C. §1983:  Former Version of §100.41

64.     Plaintiff incorporates and re-alleges paragraphs one through sixty-three and incorporates them by reference herein.

65.     The City of Pompano Beach's original Street Solicitation Ordinance, §100.41, both on its face and as applied and enforced, violated the right of Plaintiff Bernard McDonald to free speech and free expression, in violation of the First Amendment.  Because of his arrest and prosecution, Plaintiff's right to free expression was chilled and Plaintiff suffered damages.

66.     Former Section 100.41 of the City Code was an unconstitutional content-based restriction of protected speech that is subject to strict scrutiny.  It was not narrowly tailored to, nor was it the least restrictive means of furthering, any compelling government interest.

67.      On its face, former Section 100.41 of the City Code banned certain speech at certain times and places.  Moreover, it was so overbroad and burdensome that it effectively banned protected speech at other times and places.

68.     Former Section 100.41 of the City Code was facially overbroad because it swept too broadly and punished protected speech.

69.     Pursuant to the overbreadth doctrine, former Section 100.41 of the City Code was facially unconstitutional for all persons, not just Plaintiff.  Other people not before the Court desired to engage in legally protected expression but refrained from doing so because they feared the repercussions of former Section 100.41 of the City Code.

70.     Because the City of Pompano Beach acted and deprived Plaintiff of his rights guaranteed by the First Amendment to the United States Constitution, Plaintiff sues and seeks relief pursuant to 42. U.S.C. § 1983.

71.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable harm and damages.

72.     As a result, Plaintiff is entitled a declaratory judgment and damages.

## COUNT II – Fourteenth Amendment, 42 U.S.C. § 1983:  Former Version of §100.41

73.     Plaintiff incorporates and re-alleges paragraph one through sixty-three and incorporates them by reference herein.

74.     The City of Pompano Beach's former version of its Street Solicitation Ordinance, § 100.41, provided for criminal penalties.

75.     The former version of City of Pompano Beach Street Solicitation Ordinance, § 100.41, both on its face and as applied, failed to provide notice that is adequate to enable an ordinary person to understand what conduct is prohibited and how to comply with its regulations.

76.     The Ordinance, both on its face and as applied to Plaintiff, failed to establish adequate guidelines to govern law enforcement and hence, authorized and encouraged arbitrary and discriminatory enforcement.

77.     The Ordinance was void for vagueness, in violation of the Due Process Clause of the Fourteenth Amendment.

78.     Because the City of Pompano Beach has deprived Plaintiff of his rights guaranteed by the Fourteenth Amendment to the United States Constitution, Plaintiff sues and seeks relief pursuant to 42. U.S.C. § 1983.

79.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable harm and damages.

80.     As a result, Plaintiff is entitled to a declaratory judgment and damages.

## COUNT III – First Amendment 42 U.S.C. §1983 :  §100.35(C)(1)(b) and (C)(2)

81.     Plaintiff incorporates and re-alleges paragraphs one through sixty-three and incorporates them by reference herein.

-18-

82.     The City of Pompano Beach Sidewalk Ordinance, §§100.35(C)(1)(b) and (C)(2), both on its face and as applied and enforced, has violated and continues to violate the right of Plaintiff Bernard McDonald to free speech and free expression, in violation of the First Amendment.

83.     The Ordinance cannot survive intermediate scrutiny because it is not narrowly tailored to any governmental interest and it burdens more speech than is necessary to achieve its purported goals.  Additionally, the Ordinance fails to leave open ample alternative channels of communication.

84.     On its face, §§100.35(C)(1)(b) and (C)(2) of the City Code ban certain speech at certain times and places.  Moreover, they are so overbroad and burdensome that they effectively ban protected speech at other times and places.

85.     Sections 100.35(C)(1)(b) and (C)(2) are facially overbroad because they sweep too broadly and punish protected speech.

86.     Pursuant to the overbreadth doctrine, §§100.35(C)(1)(b) and (C)(2) of the City Code are facially unconstitutional for all persons, not just Plaintiff.  Other people not before the Court desire to engage in legally protected expression but refrain from doing so because they fear the repercussions of §§100.35(C)(1)(b) and (C)(2) of the City Code.

87.     Because the City of Pompano Beach has acted and threatened to act to deprive Plaintiff of his rights guaranteed by the First Amendment to the United States Constitution, Plaintiff sues and seeks relief pursuant to 42. U.S.C. § 1983.

88.     As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will suffer irreparable harm and damages, which will continue absent relief.

89.      As a result, Plaintiff is entitled to preliminary and permanent injunctive relief, a declaratory judgment, and damages.

## Prayer for Relief Counts I and II

**Wherefore**, as to Counts I and II, Plaintiff Bernard McDonald demands judgment against the City of Pompano Beach and requests the following relief:

A. A declaratory judgment that the City of Pompano Beach Street Solicitation Ordinance, § 100.41, violated the First and Fourteenth Amendments to the United States Constitution, both facially and as applied to Plaintiff;

B. An award of all damages permitted by law to Plaintiff;

C. An award of attorneys' fees and costs; and,

D. Any such other relief that may be appropriate.

## Prayer for Relief Count III

**Wherefore**, as to Count III, Plaintiff Bernard McDonald demands judgment against the City of Pompano Beach and requests the following relief:

A. A declaratory judgment that the City of Pompano Beach Sidewalk Ordinance, §§100.35(C)(1)(b) and (C)(2) of the City Code, violated the First Amendment to the United States Constitution, both facially and as applied to Plaintiff;

B. A preliminary and permanent injunction prohibiting the City and its agents from enforcing §§100.35(C)(1)(b) and (C)(2) of the City Code;

C. An award of all damages permitted by law to Plaintiff;

D. An award of attorneys' fees and costs; and,

E. Any such other relief that may be appropriate.

**Jury Demand**

Plaintiff demands trial by jury on all counts alleged above.

Respectfully submitted,

Dante P. Trevisani
Florida Bar No. 72912
E-mail: *DTrevisani@FloridaJusticeInstitute.org*
Ray Taseff
Florida Bar No. 352500
E-mail: *RTaseff@FloridaJusticeInstitute.org*
Florida Justice Institute, Inc.
100 S.E. 2nd Street
3750 Miami Tower
Miami, Florida 33131-2309
305-358-2081
305-358-0910 (Fax)

By:    *s/Ray Taseff*
        Ray Taseff

Mara Shlackman
Florida Bar No. 988618
Email:  mara@shlackmanlaw.com
Law Offices of Mara Shlackman, P.L
757 SE 17th Street; PMB 309
Fort Lauderdale, Florida 33316
954-523-1131
954-206-0593

F.J. McLawrence
Florida Bar No. 624527
Email:  info@mclawrencelaw.com
The McLawrence Law Firm
633 S. Federal Highway; Ste. 200-B
Fort Lauderdale, Florida 33301
954-318-1376
954-616-0566

-21-

**Attorneys for the Plaintiff**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**

| | | |
|---|---|---|
| BERNARD McDONALD, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. |
| | ) | |
| CITY OF POMPANO BEACH, | ) | |
| FLORIDA, a Florida municipal | ) | |
| corporation, | ) | |
| | ) | |
|    Defendant. | ) | |
| _____ | ) | |

## <u>DECLARATION OF BERNARD MCDONALD</u>

I, Bernard McDonald, make this Declaration Under Penalty of Perjury, and declare that the statements below are true, and state:

My name is Bernard McDonald. I have reviewed the Verified Amended Complaint above, and state that the facts which pertain to me are true and accurate to the best of my knowledge and belief.

I understand that a false statement in this declaration will subject me to penalties for perjury.

I declare under penalty of perjury that the foregoing is true and correct.


_____Bernard McDonald_____           Dated: September 19, 2020
/s/ Bernard McDonald

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on this 25ᵗʰ day of September, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record for Defendant City of Pompano Beach, via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

BY:   <u>/s/ *Ray Taseff*      </u>
          Ray Taseff

-24-