UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

| | | |
|---|---|---|
| BERNARD McDONALD, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 20-cv-60297-RKA |
| | ) | |
| CITY OF POMPANO BEACH, | ) | |
| FLORIDA, a Florida municipal | ) | |
| corporation, | ) | |
| | ) | |
|    Defendant. | ) | |
| _____ | ) | |

## SECOND MOTION FOR PRELIMINARY INJUNCTION
## AND SUPPORTING MEMORANDUM OF LAW

Plaintiff Bernard McDonald, by and through undersigned counsel, hereby moves for a preliminary injunction enjoining the Defendant, the City of Pompano Beach, from enforcing §§ 100.35(C)(1)(b) and (C)(2) of the City's "Building or Obstruction on Public Streets, Sidewalks, and Right-of-Way Swale Areas" Ordinance (Ordinance).

## INTRODUCTION

In his original Complaint, Plaintiff alleged that the Street Solicitation Ordinance of the Pompano Beach City Code, §100.41, violated the First Amendment because it specifically singled out the solicitation of donations for differential treatment and was therefore a content-based restriction. ECF 1. In response to Plaintiff's lawsuit and to "modify and update certain regulations regulating and impacting solicitation in order to respond to recent case law including *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015)," the City passed amendments to §100.41 on June 23, 2020 which made the Street Solicitation Ordinance content neutral and removed a total of fifteen restrictions which were the target of Plaintiff's initial complaint. *See* Ordinance 20-

60/Amendments to §100.41 (ECF 38-1). The City significantly narrowed the scope of its regulations on solicitation by restricting it only at eight specific intersections, and at other locations such as railroad crossings, construction sites, and accident scenes. *See* §100.41(B)(2-6).

However, during the same City Commission meeting, the City amended the Building or Obstruction on Public Streets, Sidewalks, and Right-of-Way Swale Areas Ordinance, §100.35, to now include a complete ban of solicitation from people in vehicles along *every* roadway with three or more lanes in one direction (including turn lanes) throughout the entire city. *See* Ordinance 20-59/Amendment to §100.35 (ECF 38-2). Currently, under §§100.35(C)(1)(b) and (C)(2), it is unlawful to solicit donations from vehicles along *every* three-lane road in Pompano Beach, regardless of the volume of traffic or the likelihood of an accident. Such a broad ban covers an enormous portion of the City's roadways and burdens substantially more speech than necessary to achieve the City's interest in traffic safety. The Supreme Court and numerous federal courts across the country have held that a law is not narrowly tailored when its geographic scope is broader than necessary or where the government has failed to use other obvious alternative measures, including laws already on the books. The City's new law is similarly unconstitutional.

Thus, paradoxically, at the same time that it improved §100.41, the City enacted an unconstitutional prohibition of protected speech in §100.35 which criminalizes solicitation from occupants of vehicles along broad swaths of city roads. Quite simply, the City has traded in one First Amendment violation under §100.41 for another under §100.35.

Plaintiff Bernard McDonald wants to continue to solicit donations from persons in vehicles, and needs to do so to support his survival. But he fears arrest under the recent amendments to

§100.35 if he does so.  He therefore seeks preliminary injunctive relief enjoining enforcement of the Ordinance so that he can engage in constitutionally protected speech.

## STATEMENT OF FACTS

### A.  Amendments to § 100.41

The City made significant changes to §100.41[1]  First, the City added a definition of "Solicit": "To personally hand to or seek to transmit by hand or receive by hand anything of any kind, whether or not payment in exchange is required or requested, to or from an occupant or occupants of any vehicle which is engaged in travel on or within any portion of any right-of-way."

Second, the City removed the content-based language that singled out and prohibited solicitation for "donations or contributions."  Now, a "Pedestrian (formerly 'Street') Solicitor" is defined as:  "Any person who while standing or going upon any portion of a public street, highway, or neutral ground within the city, personally hands to or seeks to transmit by hand or receive by hand anything of any kind from an occupant or occupants of any vehicle, which is engaged in travel on or within any portion of any right-of-way.  The term shall not apply to any person who does not enter into any portion of the Street of Highway."  A "Street or Highway" includes the "shoulder" of a road and "Neutral Ground" includes a median.  §100.35(A).

Third, the City eliminated many of the onerous regulations and requirements on solicitation—including completing a roadway safety course, wearing a brightly colored vest, erecting a warning sign, and displaying an identification number—and reduced the total number

---

[1] While the title of § 100.41 has been changed from "Street Solicitation" to "Pedestrian and Motorist Intersection Safety," the basic structure of the ordinance is the same.  Like before, the ordinance first defines key terms such as "neutral ground," "solicit," "street or highway," and "pedestrian solicitor," and then sets out a list of restrictions which, if violated, are code violations subject to imprisonment and/or a fine.

-3-

of restrictions from twenty-one to six.  Currently, under this Ordinance, a pedestrian solicitor can solicit—including panhandling—along a roadway except subject to the following restrictions:  a person cannot solicit during any period when visibility is substantially impaired by inclement weather, §100.41(B)(2); at an intersection controlled by a railroad crossing, §100.41(B)(3)*; at an intersection under construction, §100.41(B)(4); at an intersection where an accident has occurred, §100.41(B)(5); or at one of eight listed intersections, §100.41(B)(6).[2]

The eight locations listed in §100.41(B)(6) were identified from accident data submitted by the Broward Sheriff's Office, which compiled and listed the number of accidents at twenty-four major intersections in Pompano Beach.[3]  *See* List (ECF 38-3).  The eight intersections were described as "heavily trafficked intersections" which "experienced a significant number of accidents."  *See* Exhibit 1 at 1-2.  These eight locations were chosen based on their higher accident numbers in the City's attempt to narrow the limitations imposed on solicitation to only those locations where the risk of an accident was higher.  The City also included a provision that its law enforcement agency shall review traffic accident data every two years to determine if any change of the locations listed in §100.41(B)(6) is warranted.

### B.  Amendments to § 100.35

---

[2] These eight locations include the intersections at Copans Road and Andrews Avenue, Atlantic Boulevard and Dixie Highway, Sample Road and Powerline Road, Copans Road and Powerline Road, Atlantic Boulevard and Federal Highway, Copans Road and Federal Highway, Atlantic Boulevard and Powerline Road, and Sample Road and Dixie Highway.  *See* § 100.41(B)(3).  All of the intersections are three lane roadways (including the turn lane) in each direction.

[3] Nearly all of the twenty-four intersections listed in the accident data chart, including the eight intersections listed in §100.41(B)(6), are three lane roadways in each direction.  Thus, the other three lane road intersections were not found to be so dangerous as to require that solicitation be banned there.

Prior to the amendments, §100.35 (which was previously entitled, "Building or Obstruction on Public Streets, Sidewalks, and Right-of-Way Swale Areas") solely addressed the building or placement of any structure or object—inanimate objects such as receptacles, plants, trees, mail and delivery boxes—on streets, sidewalks and right-of-ways, and was silent as to the regulation of pedestrian activity.

However, now pursuant to the amendments to §100.35(C), the ordinance, which is now entitled "Building or Obstruction on Public Streets, Sidewalks, and Right-of-Way Swale Areas; Pedestrian Median Safety," restricts pedestrian activity on medians and along *all* three lane roadways and makes it unlawful for any person to:

(1) For any period of time, sit or stand, in or on:

(b) any median less than five feet where the adjacent roadway has three or more vehicular travel lanes in any one direction at the point of intersection (including travel lanes), except that pedestrians may use median strips only in the course of lawfully crossing from one side of the street to the other.

(2) For any roadway that has three or more vehicular travel lanes in any one direction at the point of intersection (including turning lanes), to hand or seek to transmit by hand or receive by hand anything to any person who operates or occupies a motor vehicle of any kind, which vehicle is engaged in travel on or within any portion of the roadway, whether or not such vehicle is temporarily stopped in travel lanes or the road.[4]

The prohibition in §100.35(C)(2), which bars people from seeking "to hand or seek to transmit by hand or receive by hand anything to any person who operates or occupies a motor vehicle[,]" is virtually identical to the language the City used in §100.41(A) to define what it means to lawfully "solicit." The amendment in §100.35(C)(2), however, makes the same lawful conduct

---

[4] Violations of §100.35(C)(1) and (2) are punishable by a fine and/or a jail sentence up to sixty days. §100.35(C)(13).

defined in §100.41(A) criminal if done on "any roadway that has three or more lanes in any one direction (including turning lanes)." Thus, under this provision, solicitation is prohibited on *every* three lane roadway in the City.

Further, §100.35(C)(1)(b) prohibits a person from merely sitting or standing on any median that is less than five feet wide next to a roadway that has three or more lanes in one direction, including turning lanes. This amendment effectively bars a person from engaging in panhandling, solicitation or other protected speech—such as holding a sign or handing out a leaflet—on every median less than five feet wide that is next to a three lane road.

In sum, the new ordinance does two things: 1) it prohibits, next to any three-lane road, merely being present on a median less than five feet wide, and therefore prohibits *all* expressive conduct—such as asking for donations—at those locations; and 2) it prohibits, next to any three-lane road, giving to or receiving something (including a donation, flyer, or pamphlet) from a vehicle occupant *even if* the person soliciting is lawfully and safely on a sidewalk. The net effect of the amendments is that the City has enacted a sweeping prohibition in §100.35 which criminalizes expressive conduct, including panhandling, along every three lane roadway in Pompano Beach. Such a prohibition is not narrowly tailored and burdens more speech than is necessary, in violation of the First Amendment.

### C. Plaintiff Bernard McDonald

Plaintiff Bernard McDonald is fifty-five years old and remains homeless. *See* Verified Amended Complaint, ¶12 (ECF 38). Because of chronic back pain and other disabilities, Mr. McDonald's ability to do physical labor is increasingly limited. *Id*. at ¶56. To help support himself, Mr. McDonald has engaged in peaceful panhandling in Pompano Beach and throughout

Broward County.  *Id*. at ¶57.  He stands on either the sidewalk, the curb's edge, or on a median and displays a sign that states, "Homeless, please help me if you can."  *Id*.

On August 10, 2018, Mr. McDonald was arrested for a violation of §100.41.  *Id*. at ¶¶ 28, 36.  According to the arrest report, Mr. McDonald was standing at the intersection of Sample Road and Federal Highway holding a cardboard sign which stated, "Homeless please help me if you can."  *Id*. at ¶38.  The report also alleged that Mr. McDonald "was not wearing an OSHA or ANSI-approved orange or other brightly-colored safety vest containing reflective material on both front and back."  *Id*. at ¶38.  Mr. McDonald was taken to jail and eventually released the next day, after being sentenced to time served.  *Id*.

Ironically, under the recent amendments to §100.41, Mr. McDonald would be allowed to lawfully solicit for charity at the location where he was arrested in 2018, at the intersection of Sample Road and Federal Highway.  That location is *not* one of the eight listed intersections in §100.41(B)(6) where pedestrian solicitation is prohibited based on the higher frequency of traffic accidents.  However, because it is a three lane road, Mr. McDonald would be subject to arrest if he panhandled there because newly-enacted §100.35(C)(2) makes it a crime to seek "to hand or seek to transmit by hand or receive by hand anything to any person who operates or occupies a motor vehicle" adjacent to "any" three lane road in Pompano Beach.  Mr. McDonald wants to panhandle at Sample and Federal Highway and along other three lane roads in Pompano Beach because, compared to other locations, that is where he can communicate his message to the highest number of people and receive donations that help him to survive.  *Id*. at ¶62.

Since his arrest and the recent amendments to §100.35, Mr. McDonald has significantly curtailed his soliciting for donations because he fears arrest and prosecution under the City code.

*Id*. at ¶12.  But as he remains homeless and poor, requesting donations is necessary to contribute to his survival, and he wants to continue to do so, and do so more frequently, in Pompano Beach. *Id*. at ¶¶ 58, 59.

## ARGUMENT

Mr. McDonald is entitled to a preliminary injunction enjoining the enforcement of §§ 100.35(C)(1)(b) and (C)(2).  A district court may issue preliminary injunctive relief when the plaintiff demonstrates that:  (1) there is "a substantial likelihood that [the plaintiff] will succeed later on the merits"; (2) the plaintiff "will suffer an irreparable injury absent preliminary relief"; (3) the plaintiff's injury likely "outweighs any harm that its opponent will suffer as a result of an injunction"; and (4) preliminary relief would not "disserve the public interest."  *Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010).

### I.    Plaintiff is Likely to Succeed on the Merits of His First Amendment Claim

Plaintiff is likely to succeed in showing that §§100.35(C)(1)(b) and (C)(2) of Pompano Beach's "Building or Obstruction on Public Streets, Sidewalks, and Right-of-Way Swale Ordinance; Pedestrian Safety" (Ordinance), is an unconstitutional prohibition of speech in violation of the First Amendment, both on its face and as applied to Mr. McDonald.  The Ordinance cannot survive intermediate scrutiny because it is not narrowly tailored and it burdens more speech than is necessary to achieve its purported goals.

As a preliminary matter, it is clear that the "solicitation of charitable contributions is protected speech" under the First Amendment.  *Riley v. National Federation of the Blind*, 487 U.S. 781, 789 (1988).  *See also Smith v. City of Fort Lauderdale*, 177 F.3d 954, 956 (11th Cir. 1999). Moreover, the physical exchange of money is an integral component and the ultimate purpose of

panhandling, which is expressive activity protected by the First Amendment. *See Village of Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620 (1980); *Citizens United v. FEC*, 558 U.S. 310, 336 (2010) ("Laws enacted to control or suppress speech may operate at different points in the speech process."). Where the physical exchange of money is intertwined with solicitation speech, it is entitled to First Amendment protection. *Speet v. Schuette*, 726 F.3d 867, 876 (6th Cir. 2013) ("*Schaumburg* does not suggest that the physical exchange of money may be isolated; it is 'intertwined' with speech that the First Amendment protects.").

### A.    The Ordinance Regulates Expressive Conduct in a Traditional Public Forum

The Supreme Court has long held that all streets and sidewalks, as a categorical matter, are traditional public fora. *Frisby v. Schultz*, 487 U.S. 474, 480-81 (1988) (quoting *Hague v. CIO*, 307 U.S. 496, 515 (1939)) ("In short, our decisions identifying streets and sidewalks as traditional public fora are not accidental invocations of a 'cliché' but recognition that . . . 'they have immemorially been held in trust for the use of the public.'"). Indeed, "[t]raditional public fora are public areas such as streets and parks that, since 'time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'" *Bloedorn v. Grube*, 631 F.3d 1218, 1231 (11th Cir. 2011) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 54 (1983)).

Moreover, the term "streets" has been interpreted by courts to include certain features associated with a street, such as medians and sidewalks. *See Cutting v. City of Portland*, 802 F.3d 79, 83 (1st Cir. 2015) ("the people of Portland have used median strips for expressive purposes in much the same way they have used parks and sidewalks"); *Reynolds v. Middleton*, 779 F.3d 222, 225 (4th Cir. 2015) ("there is no question that public streets and medians qualify as traditional

public fora"); *Petrello v. City of Manchester,* 2017 WL 3972477, at *18 (D.N.H. Sept. 7, 2017)
("the Ordinance regulates speech in traditional public fora.  The pedestrian involved in a roadside
exchange is necessarily located on or adjacent to the street, such as a sidewalk or median.").
Streets, medians, and sidewalks, therefore, are all traditional public fora entitled to the highest First
Amendment protection.

### B.   The Ordinance Fails Intermediate Scrutiny

The government's power to restrict speech in "traditional public fora" such as public streets
and sidewalks "is very limited."  *McCullen v. Coakley,* 573 U.S. 464, 476-477 (2014).   That is,
the government must prove that the restrictions "are narrowly tailored to serve a significant
governmental interest, and that they leave open ample alternative channels for communication."
*Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

That does not mean that the government must adopt the "least restrictive or least intrusive
means" possible.  *McCullen,* 574 U.S. at 486.  But it must do more than merely assert that its
chosen means are more efficient than other alternatives.  Instead, the government must "show[]
that it seriously undertook to address the problem with less intrusive tools readily available to it."
*Id*. at 486.

To be narrowly tailored, the ordinance must not "burden more speech than is necessary to
further the government's legitimate interests."  *Ward*, 491 U.S. at 799.  That is, the "government
may not regulate expression in such a manner that a substantial portion of the burden on speech
does not serve to advance its goals."  *Id*.  To satisfy these requirements, the Supreme Court has
held that the government "must demonstrate that alternative measures that burden substantially
less speech would fail to achieve the government's interests, not simply that the chosen route is

-10-

easier." *McCullen*, 573 U.S. at 495.  After all, "[i]f the First Amendment means anything, it means that regulating speech must be a last—not first—resort." *Thompson v. Western States Medical Center*, 535 U.S. 357, 373 (2002). *See also McCullen*, 572 U.S. at 486 ("[B]y demanding a close fit between the ends and the means, the tailoring requirement prevents the government from too readily sacrificing speech for efficiency.").

Pompano Beach has violated these principles with the amendments to §100.35.  The Ordinance contains two distinct prohibitions, each of which limits the ability of pedestrians to communicate messages to people in cars.

First, §100.35(C)(2) criminalizes panhandling if done on "any roadway that has three or more lanes in any one direction (including turning lanes)," even if done safely from the sidewalk. Notably, this applies regardless of the width of the median.

Second, under §100.35(C)(1)(b), it is a crime for a person to sit or stand on any median less than five feet wide which is adjacent to a three lane roadway.  This amendment effectively bans a person from panhandling, holding a sign, or passing out a leaflet, regardless of whether the conditions on that median pose a risk of danger.

Together, these measures arbitrarily prohibit protected expression on a broad swath of public space:  along every three lane road in Pompano Beach, places where people such as Plaintiff Bernard McDonald have historically exercised their right to free speech.

### 1)  Physical Exchange Ban in §100.35(C)(2)

Courts across the country have struck down bans on expressive activity along public streets and roads, including bans that are similar to those in §100.35(C)(2).  In *Reynolds v. Middleton*, for example, the Fourth Circuit held that a Virginia ordinance barring pedestrians from soliciting

contributions, distributing leaflets, or engaging in other forms of "transactional speech" on highways or medians was not narrowly tailored because, although the ordinance had a "county-wide sweep," the government's evidence "established, at most, a problem with road solicitation at busy intersections in the west end of the county." 779 F.3d 222, 224-25, 230-32 (4th Cir. 2015). The Court found that given "the absence of evidence of a county-wide problem, the county-wide sweep of the Amended Ordinance burdens more speech than necessary, just as the statute in *McCullen*—a statewide statute aimed at a problem in one location—burdened more speech than necessary." *Id*. at 231.

Here, Plaintiff's case is even more compelling than in *Reynolds*, as the City has effectively conceded that the problem it seeks to address only exists at eight intersections—the eight intersections listed in §100.41(B)(6) where pedestrian solicitation is banned because of purported traffic safety issues. All of the intersections listed in §100.41(B)(6) are three lane roads, and nearly all of the twenty-four intersections listed in the accident data chart compiled by the Broward Sheriff's Office, from which the eight intersections listed in § 100.41(B)(6) were identified, are three lane roadways in each direction. *See* ECF 38-3. Notably, those eight intersections were selected (and others excluded) because they were found to be the most dangerous based on traffic accident data. Thus, the City's own supporting data proves that the risk of harm to pedestrian solicitors is not the same along all the three lane roads in Pompano Beach.

Just like in *Reynolds*, §100.35(C)(2) violates the First Amendment "because it bans solicitation not just on the busiest or most dangerous roads and intersections, but on *all* [three lane] roadways and medians in the [City], without regard to whether solicitation could be safely conducted there." *Reynolds*, 779 F.3d at 230 (quoting *Weinberg v. City of Chicago,* 310 F.3d 1029,

-12-

1040 (7th Cir. 2002)) ("The concerns behind ... the ordinance were to alleviate sidewalk congestion [around the United Center].... [W]e cannot see how this can justify a restriction which prevents a peddler from selling his wares in large parking lots, less congested walkways, or sidewalks in less proximity to the United Center.").  Under the narrow tailoring test set forth in *McCullen*, the City cannot take a one-size-fits-all approach in §100.35(C)(2) to address the issue of pedestrian safety along its three lane roads at the expense of  burdening more speech than is necessary.

Similarly, in *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 940-41 (9th Cir. 2011), the Ninth Circuit held that an ordinance prohibiting solicitation on a street or highway failed the narrow tailoring inquiry because "it regulate[d] significantly more speech than [was] necessary to achieve the city's purpose of improving traffic safety and traffic flow at two major intersections, and the city could have achieved its goals through less restrictive measures, such as the enforcement of existing traffic laws and regulations."  Emphasizing the requirement that the government produce concrete evidence to show that the restriction will actually accomplish its asserted interest, the Court stated that, "[t]he City has offered no evidence to justify extending its solicitation ban in such a sweeping manner," and because the city bears the burden of proving narrow tailoring, "we cannot simply assume that the City's other streets, alleys, and sidewalks allegedly suffer from similar solicitation-related traffic problems."  *Id.* at 949.  *See also Rodgers v. Stachey*, No. 17-cv-06054, 2019 WL 1447497 at *10 (W.D. Ark. April 1, 2019) (ordinance restricting physical interaction between pedestrians and motorists did not pass even intermediate scrutiny because it was not narrowly tailored where there was "no evidence showing that all City streets and roadways are equally dangerous.  Without such evidence, the Court cannot assume the restriction is reasonably necessary to achieve the stated purpose of the Ordinance.").

-13-

In addition to being geographically overinclusive, §100.35(C)(2) fails the narrow tailoring inquiry because it bans roadside exchanges that do not obstruct traffic or pose safety risks. The physical exchange prohibition in §100.35(C)(2) applies to all three lane roads, citywide, to any person who seeks "to hand or seek to transmit by hand or receive by hand anything to any person who operates or occupies a motor vehicle of any kind, which vehicle is engaged in travel on or within any portion of the roadway, whether or not such vehicle is temporarily stopped in travel lanes or the road." The prohibition applies no matter the circumstances, regardless of whether there are no other cars on the road, traffic is at a standstill at a red light, or whether the exchange has no impact on any other cars on the road.

A similar restriction was struck down in *Petrello v. City of Manchester,* 2017 WL 3972477, (D.N.H. Sept. 7, 2017). There the city enacted an ordinance prohibiting persons from giving, receiving, or exchanging anything with a person in a car in the roadway. *Id*. at *4. Because the ordinance did not identify the location of the pedestrian, a person could be in violation regardless of whether she was located on a street, sidewalk, or median when an item was passed to or from a person in a car. *Id*. at *16. The Court held that the law was not narrowly tailored because the ordinance "on its face, bans all roadside exchanges in Manchester, regardless of whether those interactions obstruct traffic or otherwise create public safety issues" and prohibited the "protected speech of pedestrians who are not standing in the road and thus not physically obstructing traffic." *Id*. at *20. *See also Martin v. City of Albuquerque*, 396 F.Supp.3d 1008, 1036 (D. N.M. 2019) (ordinance containing physical exchange ban along roadways not narrowly tailored where ordinance covered exchanges which did not obstruct traffic or endanger the public).

Like the ordinance in *Petrello*, the amendments in §100.35(C)(2) do not specify a prohibited spot where a person must be to be in violation of the Ordinance. The ordinance makes it unlawful for any person on "any roadway that has three or more vehicular lanes to hand or seek to transmit by hand or receive by hand" anything to or from a person in a car. All that is required to violate §100.35(C)(2) is for the physical exchange to occur *anywhere* along "any" roadway that has three or more lanes. The City's ban along three lane roadways is so broad that it prohibits even a person who is safely standing on an adjacent sidewalk or median from accepting a donation from someone in a car stopped at a traffic light.

For all these reasons and based on the above authority, §100.35(C)(2) is not narrowly tailored and burdens more speech than is necessary to achieve the City's interest in safety.

### 2) Median Ban in §100.35(C)(1)(b)

Under §100.35(C)(1)(b), it is a crime for a person to stand or sit on any median less than five feet wide where the adjacent roadway has three or more travel lanes (in any one direction including a turn lane), citywide. The evidence submitted with the ordinance does not show that a city-wide ban on medians of less than five feet along all three lane roads is narrowly tailored to address the problem of safety. This provision effectively bans a person from panhandling, holding a sign, or passing out a leaflet while standing on a median which is less than five feet wide next to a three lane road, regardless of whether the conditions on that median pose a risk of danger. Such an all-encompassing ban is not narrowly tailored and does not pass intermediate scrutiny. Courts have struck down sweeping bans of expressive conduct on medians because they were not narrowly tailored, since the ordinances did not take into account the individual characteristics of the medians and surrounding traffic conditions.

-15-

In *Cutting v. City of Portland, Maine*, 802 F.3d 79, 87-92 (1st Cir. 2015), the First Circuit held that a complete ban on standing on all medians in the city was not narrowly tailored because it was geographically overinclusive.  Evidence of some damaged medians and isolated reports of vehicles driving onto medians was not sufficient to show that the danger existed at all medians. The Court found that "given this record, the risk is simply not posed" in many of the locations and held that the ordinance failed the narrow tailoring test.  *Id*. at 90.  *See also Thayer v. City of Worcester*, 144 F.Supp.3d 218, 237 (D. Mass. 2015) (city ordinance banning a person from standing or sitting on median strip and walking upon a roadway was not narrowly tailored  because it was not targeted at particularly dangerous locations and because "considerations such as pedestrian and vehicular traffic patterns were not given any weight.").

In *Martin v. City of Albuquerque*, 396 F.Supp.3d 1008, 1016 (D. N.M. 2019), the city passed an ordinance with a series of provisions designed to prohibit roadside solicitation, including one which made it unlawful to "access, use, occupy, congregate, or assemble" on "any portion of any median that is less than six feet in width."  The Court found that the city's assertion of safety design principles did not explain "the city's decision to apply the median ban to all those medians," *id*. at 1034, and held that the median provision was not narrowly tailored because the city failed "to show why other measures with less speech-restrictive impacts would fail to achieve the goal of reducing pedestrian-vehicle conflicts in Albuquerque."  *Id*. at 1035.  Likewise, Pompano Beach has failed to show that less restrictive measures would fail to achieve the goal of §100.35(C)(1)(b)'s similarly sweeping ban on sitting or standing on all medians which are less than five feet next to three lane roadways.

-16-

Also in *Martin*, the city's ordinance had another section which imposed a citywide ban on pedestrian presence within six feet of every entrance or exit to every freeway in the city. *Id.* at 1016. The Court held that this provision was also not narrowly tailored because the city failed to "show that *all* pedestrian presence near *all* the ramps covered by the Ordinance is equally dangerous and must be completely prohibited in order to successfully minimize pedestrian-vehicle conflicts." *Id.* at 1033 (emphasis in original.). Pompano Beach's ban on sitting or standing on any median less than five feet along all three lane roads is indistinguishable from the ban in *Martin*. The City's attempt to ensure safety by banning people from sitting or standing on any median less than five feet along all its three lane roads fails the narrow tailoring test, where the City's own supporting data fails to justify such a ban.

**C.     The Ordinance Does Not Provide Ample Alternative Channels of Communication.[5]**

A reasonable time, place, and manner restriction on protected speech must "'leave open ample alternative channels for communication of information.'" *Evans v. Sandy City*, 944 F.3d 847, 860 (10th Cir. 2019) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). While the First Amendment does not require that all modes of communication be available at all times and in all places, a restriction on expression may be invalid if the remaining means of communication are inadequate. *Evans*, 944 F.3d at 860 (citing *City Council of Los Angeles v.*

---

[5] Some courts, after concluding that an ordinance or regulation failed the narrow tailoring prong of the test for constitutionality under the First Amendment, have declined to reach the issue of whether the ample alternative channels of communication prong was satisfied. *McCullen v. Coakley*, 573 U.S. 464, 496 n.9 (2014); *cf. Reynolds v. Middleton*, 779 F.3d 222, 232 n.5 (4th Cir. 2015) (noting that because it had found the ordinance at issue failed the narrow tailoring prong, it was not required to consider the ample alternative channels prong, but briefly addressed the issue anyway, since it was likely to arise on remand).

*Taxpayers for Vincent*, 466 U.S. 789, 812 (1984)).  In examining the adequacy of alternative channels, courts look in part at the speaker's ability to reach his target audience.  *Evans*, 944 F.3d at 860 (citing *Ward*, 491 U.S. at 802).

In *Reynolds v. Middleton*, 779 F.3d 222, 224-225 (4th Cir. 2015), a homeless individual challenged the constitutionality of a county ordinance that prohibited him from sitting or standing in a median to solicit donations.   The appellate court noted that the plaintiff had plead in his verified complaint that his target audience was drivers, and that medians were the most effective way to reach drivers.  *Id.* at 232 n.5.  Even though the ordinance allowed solicitation on sidewalks and at the side of the road, the appellate court found that there were genuine issues of material fact as to the adequacy of these alternative channels, precluding summary judgment for the county.  *Id.*

Most recently, in *McCraw v. City of Oklahoma City*, ___ F.3d ___, 2020 WL 5103634 at **2-3 (10th Cir. 2020), the plaintiffs, who included panhandlers, political parties, and others, challenged an ordinance that outlawed pedestrian presence on medians in all streets with a speed limit of forty miles per hour or more.   In conducting its ample alternative channels of communication analysis, the court found that the record did not support the lower court's conclusion that moving to a sidewalk was an ample alternative.  *Id*. at *14.  The court noted that communications from the sidewalk would not be as visible to drivers as communications from medians, and plaintiffs would have to compete with storefront signage for attention.  *Id.*  The court also pointed out that for those soliciting funds, which was protected expression, roadsides and sidewalks did not provide safe and direct access to the driver, who was often the only occupant of a vehicle.  *Id.*   The court also observed that plaintiffs would be out of the sightline of drivers while on sidewalks, and would be much more visible from medians.  *Id*. at *15.  The court stated

that approximately 400 medians were affected by the ordinance, and that slightly over 100 were unaffected by the ordinance, but noted that the unaffected medians could be significantly less effective for communicative purposes, since fewer vehicles were present. *Id.* "Just as in real estate, location matters in some constitutional questions." *Id.* For these reasons, the court found that the ordinance did not satisfy the ample alternative channels of communication requirement. *Id.*

Here, §100.35(C)(1)(b)'s sweeping ban on sitting or standing on all medians of less than five feet next to three lane roadways is just as restrictive as the ordinance in *McCraw*. To the extent that the City contends that the Plaintiff and others can occupy medians on other roadways with fewer lanes, those locations would be less effective, since fewer vehicles would be present, as *McCraw* noted. Moreover, the median restriction in §100.35(C)(1)(b) should be considered along with §100.35(C)(2), which criminalizes panhandling if done on "any roadway that has three or more lanes in any one direction (including turning lanes)," even if done safely from the sidewalk. The combined effect of these restrictions makes the City's ordinance more burdensome than the one at issue in *Reynolds*, where the plaintiff was foreclosed from using medians but could still panhandle from sidewalks and roadsides on the same streets, and yet the court still questioned the adequacy of alternative channels of communication. In light of *McCraw* and *Reynolds*, the amendments to §100.35 fail to provide ample alternative channels of communication.

For all these reasons, the amendments to §100.35 cannot withstand intermediate scrutiny because they are not narrowly tailored and burden substantially more speech than is necessary to achieve the City's interest in safety.

Finally, pursuant to the overbreadth doctrine, because the Ordinance's "very existence may cause others not before the court to refrain from constitutionally protected speech or

expression[,]'" Plaintiff seeks a declaration that the Ordinance is facially unconstitutional and unenforceable against anyone. *Hill v. Colorado*, 530 U.S. 703, 731-32 (2000) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)).

### III.    Plaintiff Has Established the Remaining Criteria for a Preliminary Injunction

### A.  Irreparable Injury

"[I]t is well settled that the 'loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *KH Outdoor, LLC v. City of Titusville*, 458, F.3d 1261, 1271-72 (11th Cir. 2006) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The penalization of Plaintiff's First Amendment rights cannot be "cured by the award of monetary damages." *KH Outdoor,* 458 F.3d at 1272. *See also Scott,* 612 F.3d at 1295.

### B.  Balance of Harms and Public Interest

The third and fourth preliminary injunction criteria are also satisfied. With respect to the balance of harms, "even a temporary infringement of First Amendment rights constitutes a serious and substantial injury." *Scott*, 612 F.3d at 1297. On the other side of the ledger, "the public, when the state is a party asserting harm, has no interest in enforcing an unconstitutional law." *Id.* Enforcing unconstitutional laws also wastes valuable public resources. Finally, because the public has no interest in enforcing an unconstitutional speech restriction, an injunction against enforcement cannot "disserve" the public interest. *Id*. at 1290, 1297.

### CONCLUSION

Based on the above argument and authorities, Plaintiff Bernard McDonald respectfully requests that this Court immediately enjoin the City and its agents from enforcing §§100.35(C)(1)(b) and (C)(2) of the Pompano Beach Municipal Code.

Respectfully submitted,

Dante P. Trevisani
Florida Bar No. 72912
E-mail: *dtrevisani@floridajusticeinstitute.org*
Ray Taseff
Florida Bar No. 352500
E-mail: *rtaseff@floridajusticeinstitute.org*
Florida Justice Institute, Inc.
100 S.E. 2nd Street
3750 Miami Tower
Miami, Florida 33131-2309
305-358-2081
305-358-0910 (Fax)


By:   *s/Ray Taseff*
        Ray Taseff

Mara Shlackman
Florida Bar No. 988618
Email:  mara@shlackmanlaw.com
Law Offices of Mara Shlackman, P.L
757 SE 17th Street, PMB 309
Fort Lauderdale, Florida 33316
954-523-1131
954-206-0593 (Fax)

F.J. McLawrence
Florida Bar No. 624527
Email:  info@mclawrencelaw.com
The McLawrence Law Firm
633 S. Federal Highway; Ste. 200-B
Fort Lauderdale, Florida 33301
954-318-1376
954-616-0566

**Attorneys for Plaintiff**

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that I electronically filed today, September 28, 2020, the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all persons registered to receive electronic notifications for this case, including all opposing counsel.


By: ___*s/Ray Taseff*_____
            Ray Taseff